UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

In re

Case No. **25-30484-pcm11 (Lead Case); 25-30486 (Jointly Administered)**

Amended

**Notice of Final Hearing on Motion [*Check One*]**

**For Use of Cash Collateral**

Debtor

**To Obtain Credit**

YOU ARE NOTIFIED THAT:

1. The undersigned moving party, **Sherwood Hospitality Group, LLC and DVKOCR Tigard, LLC**, filed a Motion ☐ For Use of Cash Collateral ☐ To Obtain Credit (check one).  The motion is attached and includes the statement required by Local Bankruptcy Form (LBF) 541.5, Procedures re: Motions for Use of Cash Collateral or to Obtain Credit.

2. The name and service address of the moving party's attorney (or moving party, if no attorney) are:_____

3. An evidentiary hearing on the motion, at which witnesses may testify, will be held as follows:

    **Date:** _____    **Time:** _____

    **Location**:

    Courtroom #_____, **USBC, 1050 SW 6th Ave., 7th Floor, Portland, OR 97204**

    ☐ Te    Telephone Hearing [*See LBF 888, Telephone Hearing Requirements*.]

    **Call In Number:** (855) 244-8681

    **Access Code:**    2319 199 8338 for Judge David W. Hercher (dwh)

    2311 562 9438 for Judge Peter C. McKittrick (pcm)

    2303 266 1826 for Judge Teresa H. Pearson (thp)

    2318 130 5070 for Judge Thomas M. Renn (tmr)

    ☐ Video Hearing. To connect, see www.orb.uscourts.gov/video-hearings.

4.  If you wish to object to the motion, you must, within 14 days of the service date shown in paragraph 5 below, file with the clerk at 1050 SW 6th Ave. #700, Portland OR 97204 or 405 E 8th Ave. #2600, Eugene OR 97401: (1) a written response which states the facts upon which you will rely, and (2) a certificate showing the response has been served on the U.S. trustee and the attorney or party named in paragraph 2 above.

5.  I certify that on _____ this notice and the motion were served pursuant to Federal Rule of Bankruptcy Procedure (FRBP) 7004 on the debtor(s), any debtor's attorney, any trustee, any trustee's attorney, members of any committee appointed under 11 U.S.C. § 1102 or elected pursuant to 11 U.S.C. § 705 or its authorized agent (or, if no committee in a chapter 11 case, on all creditors listed on the list filed pursuant to FRBP 1007(d)), any creditors' committee attorney, the U.S. trustee, and all entities with any interest in the cash collateral subject to this motion, whose names and addresses used for service are as follows:

_____
Signature of Moving Party or Attorney                                    OSB#

_____
(If debtor is movant) Debtor's Address & Last 4 Digits of Taxpayer ID#

_____

1  Douglas R. Ricks, OSB No. 044026
   Christopher N. Coyle, OSB No. 073501
2  SUSSMAN SHANK LLP
   1000 SW Broadway, Suite 1400
3  Portland, OR  97205-3089
   Telephone: (503) 227-1111
4  Facsimile: (503) 248-0130
   E-Mail:  dricks@sussmanshank.com
5          ccoyle@sussmanshank.com

6      Proposed Attorneys for Debtors-in-Possession

7

8

9              IN THE UNITED STATES BANKRUPTCY COURT

10                    DISTRICT OF OREGON

11  In re                              )   Case Nos. 25-30484-pcm11 (Lead Case);
                                       )   25-30486-pcm11 (Jointly Administered)
12  Sherwood Hospitality Group, LLC and )
    DVKOCR Tigard, LLC,                )
13                                     )   DEBTORS' MOTION FOR ENTRY OF
                  Debtor-in-Possession. )   FINAL ORDER AUTHORIZING USE OF
14                                     )   CASH COLLATERAL AND EXISTING
                                       )   CASH MANAGEMENT SYSTEMS
15                                     )
                                       )   LBR 9013-1(b)(1) Parties: L-O Sherwood
16                                     )   Finance, LLC; L-O Tigard Finance, LLC
                                       )
17                                     )
                                       )
18                                     )
                                       )
19  _____ )

20       Pursuant to sections 105(a), 345(b), and 363(c) of title 11 of the United States Code (the

21  "**Bankruptcy Code**"), Rules 4001(b) and 9014 of the Federal Rules of Bankruptcy Procedures

22  (the "**Bankruptcy Rules**"), Debtors[1] Sherwood Hospitality Group, LLC ("**Sherwood**

23  **Hospitality**") and DVKOCR Tigard, LLC ("**DVKOCR**") (phonetic: dah vee kOr ), individually

24  and collectively, move this Court for entry of an entry of an order, substantially in the form

25  _____
    [1] "**Debtors**" means collectively the two entities designated as a debtor in the above-captioned cases
26  (each a "**Debtor**") that filed voluntary petitions for relief on February 17, 2025 in the United States
    Bankruptcy Court for the District of Oregon.

**Page 1 of 9** - MOTION FOR … USE OF CASH COLLATERAL AND [RELATED RELIEF]

1  attached hereto as Exhibit 1, (the "**Proposed Order**") authorizing use of cash collateral and

2  existing cash management systems, granting adequate protection, and granting related relief. In

3  support of the Motion, Debtors rely on the Declaration of Alkesh Patel in Support of Management

4  Motions (the "**Patel Dec.**"). In further support of the Motion, the Debtors respectfully represent as

5  follows:

6  <div align="center">**JURISDICTION AND VENUE**</div>

7      1.      On February 17, 2025 (the "**Petition Date**"), the Debtors filed voluntary petitions

8  under chapter 11 of the Bankruptcy Code. Pursuant to sections 1107 and 1108 of the Bankruptcy

9  Code, the Debtors continue to operate and manage their properties as debtors-in-possession.

10     2.      The United States Bankruptcy Court for the District of Oregon (the "**Court**") has

11  jurisdiction over this matter pursuant to 28 U.S.C. § 1334; this matter is a core proceeding within

12  the meaning of 28 U.S.C. § 157(b). Debtors confirm their consent to the Court's entry of a final

13  order in connection with this motion (the "**Motion**") to the extent that it is later determined that

14  the Court, absent consent of the parties, cannot enter final orders or judgments in connection

15  herewith consistent with Article III of the United States Constitution. Venue is proper pursuant to

16  28 U.S.C. § 1408 and 1409.

17     3.      The statutory bases for the relief requested include sections 105(a), 345, and 363 of

18  the Bankruptcy Code and Bankruptcy Rules 4001 and 9014.

19  <div align="center">**FACTUAL BACKGROUND**</div>

20  **I.    The Debtor's Business**

21     4.      Each of the Debtors is a real estate holding company with its primary asset being

22  an interest in a parcel of real estate together with the structure(s) and improvements thereon.

23  Sherwood Hospitality owns a 60% interest in the real property with an address of 22000 SW

24  Meinecke Parkway, Sherwood, Oregon 97140 (the "**Sherwood Property**") upon which is situated

25  a 73-room hotel branded as a Hampton Inn & Suites (the "**Sherwood Hotel**"). DVKOCR owns a

26  100% interest in the real property with an address of 11799 SW 69th Avenue, Tigard, Oregon

1    97223 (the "**Tigard Property**") upon which is situated a 152-room hotel branded as a Hampton

2    Inn & Suites (the "**Tigard Hotel**").[2] *See* Patel Dec. ¶ 4.

3         5.    Both the Sherwood Property and the Tigard Property are part of an asset

4    management portfolio managed by Evergreen Hospitality Group, LLC ("**Evergreen**"). While

5    Evergreen provides back office and related asset-based services, it does not provide services for

6    day-to-day operations and management of the Hotels. Moreover, neither Sherwood Hospitality nor

7    DVKOCR have any employees whatsoever, including employees to operate the Hotels. *Id.* at ¶ 5.

8         6.    Sherwood Hospitality and DVKOCR contracted with Resolution Road Hospitality,

9    a Delaware limited liability company, ("**RRH**") to provide management and operational services

10   in connection with the Hotels. This includes (a) supply of the necessary workforce to provide

11   staffing and services at the Hotels, (b) collection of all room rates, taxes, and related remittances

12   due to the Hotels from their respective guests, (c) payment of all operating expenses for the Hotels,

13   including payroll expenses and transient lodging taxes, and (d) establishment and maintenance of

14   operating financial accounts to provide for receipt of income and expenditures for expenses related

15   to operations of the Hotels. The agreements between the Debtors and RRH were memorialized in

16   the form of Hotel Management Agreements, both dated November 1, 2023 (collectively the "**Hotel**

17   **Management Agreements**"). *Id.* at ¶ 6.

18        7.    Debtors maintain financial accounts at Wells Fargo, NA ("**Wells Fargo**") for

19   receipt of all revenue derived from the operations of the Hotels. Debtors' accounts at Wells Fargo

20   are subject to Deposit Account Control Agreements ("**DACA**") in favor of secured creditors L-O

21   Sherwood Finance, LLC ("**L-O Sherwood**") and L-O Tigard Finance, LLC ("**L-O Tigard**").

22   Pursuant to the authority under the DACA and in keeping with security interests held by L-O

23   Sherwood and L-O Tigard, described below, the Wells Fargo accounts are subject to the liens held

24   by L-O Sherwood and L-O Tigard so that control of the Debtors' receipts are maintained by those

25

26   _____

[2] The Sherwood Hotel and the Tigard Hotel are collectively referred to as the **Hotels** in connection
with this Motion.

**Page 3 of 9** - MOTION FOR … USE OF CASH COLLATERAL AND [RELATED RELIEF]

1  secured creditors. *Id.* at ¶ 12.

2         8.     In order to facilitate payment of the operating expenses of the Hotels, RRH supplies

3  L-O Sherwood and L-O Tigard with information regarding such expenses and obtains such

4  creditors' consent to receive sufficient funding for the expenses. L-O Sherwood and L-O Tigard

5  then transfer the approved sums to RRH in order to allow it to make disbursements for ordinary

6  operating expenses consistent with RRH's obligations under the Hotel Management Agreements.

7  As outlined in the Hotel Management Agreements, RRH segregates the funds it receives for

8  payment of the Debtors' operating expenses and does not comingle such funds with RRH's

9  property. *Id.* at ¶ 13.

10         9.     Additional information regarding the Debtors; business, capital structures, and the

11  events leading to the commencement of this Chapter 11 case may be found in the Patel Dec., filed

12  contemporaneously herewith and incorporated herein by reference.

13  **II.**    **Secured Creditors' Interests in Collateral**

14        10.    Cash collateral, as defined in section 363(a) of the Bankruptcy Code, includes,

15  without limitation, all checks, receipts, payments, proceeds, products, offspring, rents, or profits

16  arising from the prepetition or postpetition use, lease, sale, or disposition of a secured creditor's

17  collateral. L-O Sherwood and L-O Tigard assert liens in certain of the Debtors' assets pursuant to

18  various loan agreements, notes, deeds of trust, security agreements, and other documents, to secure

19  obligations in the principal amount of approximately $11,300,000.00 as to L-O Sherwood and

20  $23,800,000.00 as to L-O Tigard as of the Petition Date. L-O Sherwood and L-O Tigard's security

21  interests were perfected by (a) a deed of trust, including an assignment of leases and rents, in favor

22  of L-O Sherwood filed in Washington County, Oregon against the Sherwood Property on October

23  12, 2018; (b) a deed of trust, including an assignment of leases and rents, in favor of L-O Tigard

24  filed in Washington County, Oregon against the Tigard Property on December 14, 2018; (c) a

25  UCC-1 filed on October 12, 2018 with the Oregon Secretary of State naming Sherwood Hospitality

26  Group as the debtor and L-O Sherwood as the secured party; and (d) UCC-1 filed on December

1    17, 2018 with the Oregon Secretary of State naming DVKOCR as the debtor and L-O Sherwood

2    as the secured party. *See* Patel Dec., at ¶ 14.

3         11.    The UCC-1 against Sherwood Hospitality Group was assigned to L-O Repo Seller,

4    LLC by a filing on January 27, 2021, and then re-assigned to L-O Sherwood by a filing on

5    December 27, 2022. A continuation statement for the UCC-1 against Sherwood Hospitality Group

6    was filed on July 13, 2023, and a continuation statement for the UCC-1 against DVKOCR was

7    filed on July 24, 2023. Both UCC-1 statements describe the collateral as "All assets of Debtor,

8    whether now owned or existing, or hereafter acquired or arising and wheresoever located, and all

9    proceeds and products thereof." *Id.* at ¶ 15.

10         12.    The estimated value of the Sherwood Property and the Sherwood Hotel is

11    approximately $15,500,000 as of the Petition Date. The estimated value of the Tigard Property and

12    the Tigard Hotel is $37,000,000 as of the Petition Date. Debtors' cash holdings, pending receipts,

13    and furniture, fixtures, and equipment add to the collateral base for L-O Sherwood and L-O Tigard.

14    Through discussion with their counsel, the Debtors understand that L-O Sherwood and L-O Tigard

15    consent to the use of its cash collateral and maintenance of the cash management system on the

16    basis proposed herein. *Id.* at ¶ 16.

17         13.    Some taxing authorities, suppliers, and vendors of the Debtors may be entitled to

18    assert statutory liens against property of the Debtors, however, to the Debtors' knowledge no such

19    liens have been filed (and any liens previously filed have been satisfied) and the Debtors have not

20    evaluated the extent or validity of any such liens. In seeking the relief requested herein, the Debtors

21    do not intend to alter, modify, or impair the rights of any statutory lien claimant. *Id.* at ¶ 17.

22         14.    The Debtors believe that L-O Sherwood and L-O Tigard are the only creditors that

23    have or may claim an interest in the Debtors' existing cash collateral and in the Debtors' accounts,

24    payment intangibles, and other assets that will be used and collected by the Debtors postpetition

25    in the ordinary course of business to generate additional cash collateral. *See* Patel Dec., at ¶ 18.

26

**Page 5 of 9** - MOTION FOR … USE OF CASH COLLATERAL AND [RELATED RELIEF]

III.    **The Debtors' Need to Use Cash Collateral**

15.    The Debtors require continued use of cash collateral to operate and maintain the Sherwood Hotel and the Tigard Hotel and preserve the value of the respective estates. Without the use of cash collateral, the Debtors, through RRH, will not have the funds necessary to pay the ordinary expenses, including, wages and other payroll expenses, rents, utilities, insurance, and taxes for operation of the Hotels. As outlined in the Debtors' Motion for Approval of Assumption of Hotel Management Agreements [Docket No. 30], the relationship between the Debtors, L-O Sherwood, L-O Tigard, and RRH is crucial to maintaining services to the guests of the Hotels and preserving the branding and value of the Hotels and the Debtors' estates. Accordingly, to preserve its value as a going concern, the Debtors require the ongoing use of cash collateral. *See* Patel Dec. ¶ 19.

IV.    **Continued Use of DACAs to Facilitate Hotel Management and Use of Cash**

16.    As outlined above, the Debtors use of the receipts from operations of the Hotels depends on the consent of L-O Sherwood and L-O Tigard for use of their cash collateral and access and operational oversight of RRH to pay the cost for running the Hotels. Use of the DACAs along with coordination with RRH provides for an existing framework to allow for proper function of hotel operations without disruption. *See* Patel Dec. ¶ 20.

17.    In contrast, having the Debtors upend those systems to create new bank accounts and re-establish the necessary connections to avoid operational disruptions would be inconsistent with the obligations owed by the Debtors to L-O Sherwood, L-O Tigard, and RRH and would be an unnecessary administrative burden on the Debtors. As such, the Debtors seek authorization to maintain the DACAs for receipt of income from the Hotels and payment of operating expenses by RRH. *Id.* at ¶ 21.

18.    Section 345 commands that the debtor-in-possession require a bond in favor of the United States, which is generally accomplished by opening a designated debtor-in-possession account with a depository institution approved by the United States Trustee. However, the court

**Page 6 of 9** - MOTION FOR … USE OF CASH COLLATERAL AND [RELATED RELIEF]

1  may order otherwise and this command does not require compliance if the deposit is federally

2  insured. 11 U.S.C. § 345(b). A review of the recent activity in the DACAs shows that the balance

3  has not exceeded the insurance limits provided by the FDIC. In light of this, and the need for

4  continued maintenance of the financial arrangements with L-O Sherwood, L-O Tigard, and RRH,

5  cause exists for the court to approve continued use of the DACAs. To ensure compliance with

6  section 345 as to other proceeds or payments outside of ordinary receipts and in amounts that

7  would exceed the available deposit insurance, the Debtors intend to each establish debtor-in-

8  possession accounts at Wells Fargo for such monies received by the respective estates. *Id.* at ¶ 23.

9  <center>**RELIEF REQUESTED**</center>

10  19.    The Debtor requests that the court authorize its use of cash collateral and its existing

11  cash management systems under the terms and conditions of the Proposed Order.

12  <center>**BASIS FOR RELIEF REQUESTED**</center>

13  20.    The Debtor requires the use of cash collateral to preserve the value of its business

14  as a going concern and to preserve and maintain the assets of the bankruptcy estate. The Debtors

15  recognize that L-O Sherwood's and L-O Tigard's interests in cash collateral is entitled to adequate

16  protection. *See* 11 U.S.C. § 363(e). Exactly what constitutes adequate protection must be decided

17  on a case-by-case basis. *See In re Energy Partners, Ltd.*, 409 BR 211, 236 (Bankr. S.D. Tex 2009)

18  (*citing MBank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F2d 1393, 1396-97 (10th Cir

19  1987)); *In re Martin*, 761 F2d 472, 476 (8th Cir 1985). The focus of this requirement is to protect

20  secured creditors from diminution in the value of their collateral during the reorganization process.

21  *Energy Partners*, 409 BR at 236.

22  21.    As an initial matter, L-O Sherwood holds an equity cushion of approximately

23  $4,390,443, or approximately 28% (cushion of $4,390,443 to secure obligations of approximately

24  $11,109,557). L-O Tigard holds an equity cushion of approximately $8,714,613 or approximately

25  23% (cushion of $8,714,613 to secure obligations of approximately $28,285,387). Courts routinely

26  hold that equity cushions of between 11.45% and 20% have been approved as providing adequate

**Page 7 of 9** - MOTION FOR … USE OF CASH COLLATERAL AND [RELATED RELIEF]

1  protection for use of a lender's cash collateral. *In re Mellor,* 734 F2d 1396, 1400 (9ᵗʰ Cir 1984)

2  (holding that a 20% equity cushion constituted adequate protection to a secured creditor); *In re*

3  *Boulders on the River*, 164 BR 99, 104 (9ᵗʰ Cir BAP 1994) (authorizing use of cash collateral

4  where secured creditor was protected with an equity cushion of 11.45%). Accordingly, L-O

5  Sherwood and L-O Tigard are adequately protected by their equity cushion alone.

6      22.    L-O Sherwood and L-O Tigard, by virtue of section 552(b)(2), also hold continuing

7  liens in postpetition property in the nature of "rents … or other payments for the use or occupancy

8  of rooms and other public facilities for use of their cash collateral by providing post-petition

9  replacement liens. The Bankruptcy Code recognizes the provision of additional or replacement

10  liens as a form of adequate protection. 11 U.S.C. § 361(2). The purpose of replacement liens as a

11  form of adequate protection is to compensate the secured creditor for any decrease in the value of

12  its pre-petition collateral. *See In re Pacific Lifestyle Homes, Inc.*, 2009 WL 688908, at *8 (Bankr.

13  W.D. Wash. Mar. 16, 2009).

14      23.    In addition, the Debtors will continue to allow L-O Sherwood and L-O Tigard to

15  exercise control of the cash collateral. While this arrangement arguably requires no court

16  authorization, as it is being done with the creditors' consent, the Debtors believe an order is

17  appropriate to authorize adequate protection payments and to ensure transparency into the control

18  and use of funds deposited into the Debtors' accounts and to ensure that the Debtors and RRH are

19  both in a position to perform their obligations under the Hotel Management Agreements. *See* 11

20  U.S.C. § 363(c)(2) (allowing use of cash collateral with consent). As set out above, the seamless

21  function of the relationship between the Debtors, L-O Sherwood, L-O Tigard, and RRH is essential

22  to ensure the operations of the Hotels continue without disruption and that guests of the Hotels are

23  provided with the services they expect. *Id.* at ¶ 23.

24      24.    Finally, Sherwood Hospitality Group is under contract with a buyer for a sale of

25  the Sherwood Property and the Sherwood Hotel for the sum of $15,500,000 with an expected

26  closing in May 2025. Ensuring operations through closing is vital to facilitating a completion of

**Page 8 of 9** - MOTION FOR … USE OF CASH COLLATERAL AND [RELATED RELIEF]

1    that sale, which is projected to satisfy the claim of L-O Sherwood in full and provide additional

2    cash proceeds to pay other creditors. Debtors submit that the equity cushions, continuing liens,

3    continued use of the DACAs, and, when received, proceeds from the sale of the Sherwood Property

4    and Sherwood Hotel, will adequately protect L-O Sherwood and L-O Tigard from any diminution

5    in the value of their collateral during the case. Moreover, the Debtors' use of cash collateral is in

6    the best interests of the Debtors' estates because the continued value of operating Hotels greatly

7    outweighs the risks and costs of defaulting on the Hotel Management Agreements with RRH and

8    having the Debtors forced to cease operations of the Hotels and liquidate their assets. *Id.* at ¶ 24.

9         25.    Closely associated with the approval for use of cash collateral is the authorization

10   to continue use of the DACA accounts for ordinary income and expenses from operations of the

11   Hotels. Cause exists under section 345(b) for the court to approve continued use of the DACA

12   accounts and recent history suggests that funds held in the DACA accounts will be protected by

13   the available FDIC insurance carried by Wells Fargo Patel Decl., at ¶ 12. Therefore, to avoid

14   disruption and maintain current oversight of cash collateral, the court should approve continued

15   use of the DACA accounts on the terms and conditions provided in the attached proposed Order.

16                                      **<u>CONCLUSION</u>**

17        WHEREFORE, the Debtors respectfully request entry of the proposed order granting the

18   relief requested herein, and such other and further relief as the court may deem just and appropriate.

19        Dated this 28th day of February, 2025.

20                          SUSSMAN SHANK LLP

21

22        By /s/ Douglas R. Ricks
              Douglas R. Ricks, OSB No. 044026
23            Proposed Attorneys for Debtors

24

25

26

**Page 9 of 9** - MOTION FOR … USE OF CASH COLLATERAL AND [RELATED RELIEF]

1

2

3

4

5

6

7

8

9

10              IN THE UNITED STATES BANKRUPTCY COURT

11                         DISTRICT OF OREGON

12   In re                                    )   Case Nos. 25-30484-pcm11 (Lead Case);
                                               )   25-30486-pcm11 (Jointly Administered)
13   Sherwood Hospitality Group, LLC and       )
     DVKOCR Tigard, LLC,                        )
14                                             )   **[PROPOSED]** ORDER AUTHORIZING
                        Debtor-in-Possession.  )   USE OF CASH COLLATERAL AND
15                                             )   EXISTING CASH MANAGEMENT
                                               )   SYSTEMS
16                                             )
                                               )
17                                             )
                                               )
18                                             )
                                               )
19   _____       )

20          THIS MATTER came before the Court on Debtors' Motion for  Entry of Final Order

21   Authorizing Use of Cash Collateral and Existing Cash Management Systems [ECF No. __] (the

22   "**Motion**")[1], pursuant to section 105(a), 345, and 363 of the Bankruptcy Code and Bankruptcy

23   Rules 4001(b) and 9014, authorizing the Debtors' use of the cash collateral of L-O Sherwood and

24   L-O Tigard and the continued use of certain financial accounts; having considered the Motion and

25   _____

26   [1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such
     terms in the Motion.

**Page 1 of 7** – ORDER AUTHORIZING USE OF CASH COLLATERAL AND [RELATED RELIEF]

Exhibit 1 - Page 1 of 7

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1  the Declaration of Alkesh Patel in support of the Motion; having determined that this court has

2  jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; with proper and adequate

3  notice of the Motion having been given; having determined that no other or further notice is

4  necessary; having determined that the legal and factual bases set forth in the Motion establish just

5  cause for the relief granted herein; and this court having determined that the relief sought in the

6  Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in

7  interest; and being otherwise fully advised,

8  **THE COURT FINDS THAT:**

9  A.    On February 17, 2025 (the "Petition Date"), Debtors each filed a voluntary petition

10  for relief under chapter 11 of the Bankruptcy Code (the "Code").

11  B.    Debtors continue in possession of Debtors' property and management of Debtor's

12  businesses as Debtor-in-Possession, in accordance with sections 1107 and 1108 of the Bankruptcy

13  Code.  No trustee or examiner has been appointed.  The Court has jurisdiction over this case under

14  28 U.S.C. §§ 157 and 1334.  Venue of this case is properly in this District under 28 U.S.C. §§ 1408

15  and 1409.  This matter is a core proceeding under 28 U.S.C. §157(b).

16  C.    Without the use of cash collateral and use of its existing cash management system,

17  Debtors assert they have insufficient funds to provide to their hotel management company, RRH,

18  for the ordinary operating expenses of the Sherwood Hotel and the Tigard Hotel.  Debtors assert

19  there is an immediate need to use cash collateral to pay the operating expenses of the Hotels and

20  to preserve the value of Debtors' businesses.

21  D.    Debtors assert that maintaining the DACA accounts and allowing L-O Sherwood

22  and L-O Tigard (the "**Lien Creditors**") to sweep such accounts and release funds to RRH on a

23  consensual basis is the most efficient means of maintaining ongoing operations of the Hotels

24  without disruption.

25

26

**Page 2 of 7** – ORDER AUTHORIZING USE OF CASH COLLATERAL AND [RELATED RELIEF]

Exhibit 1 - Page 2 of 7

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

E.      Debtors assert that the Lien Creditors appear to have security interest/liens upon the Cash Collateral as of the Petition Date; those Lien Creditors, as set forth by the Debtors in the Motion, are as follows:

| Lien Creditor | Approximate Amount Owing | Cash Collateral Property Value* | Brief Collateral Description |
|---|---|---|---|
| L-O Sherwood | $11,300,000.00 | Unknown | Sherwood Property, including rents and proceeds; All personal property |
| L-O Tigard | $23,800,000.00 | Unknown | Tigard and Sherwood Properties, including rents and proceeds; All personal property |

* Cash Collateral Property Value does not include value of other collateral

F.      Debtors assert that other than the Lien Creditors, Debtors are not aware of any parties holding an interest in Cash Collateral.

**IT IS HEREBY ORDERED THAT**:

1.      The Motion is granted as set forth herein.

2.      Pursuant to sections 105(a) and 363(c)(2) of the Bankruptcy Code, Debtors are authorized to use the cash collateral of L-O Sherwood and L-O Tigard during these chapter 11 cases to pay the ordinary expenses of the Hotels as requested by RRH along with any fees accrued and owing to RRH. Such use will be with the consent of L-O Sherwood or L-O Tigard and subject to the procedures set out in this Order.

3.      Use of the cash collateral of L-O Sherwood and L-O Tigard will be conducted under the following procedures:

a.      Receipts from rents, fees, and other charges related to the operations of the Hotels will be deposited into the Debtors' existing accounts at Wells Fargo subject to DACAs in favor of L-O Sherwood or L-O Tigard;

**Page 3 of 7** – ORDER AUTHORIZING USE OF CASH COLLATERAL AND [RELATED RELIEF]

Exhibit 1 - Page 3 of 7

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1          b.      Funds so deposited in the Wells Fargo accounts subject to DACAs will be

2  swept into other accounts held and maintained by the Debtors at Wells Fargo or other, approved

3  debtor-in-possession accounts established by the Debtors after the Petition Date.

4          c.      RRH will submit requests to L-O Sherwood or L-O Tigard for payment of

5  ordinary expenses and its fees in the same manner and on the same timeframe as it has customarily

6  done prepetition; provided, however, that nothing in this Order will prevent Debtors, RRH, L-O

7  Sherwood, and L-O Tigard from changing the manner and timing of such requests by agreement;

8          d.      L-O Sherwood or L-O Tigard will review and approve the requests from

9  RRH, along with any requests from the Debtors to pay fees under 28 U.S.C. §1930(a)(6), and

10  release such funds to permit RRH to pay the approved expenses and fees on a timely basis; and

11          e.      RRH will ensure that the approved expenses and fees, including the

12  approved fee requests from the Debtors, are paid and provide the Debtors with a monthly

13  reconciliation, by the 15th of each successive month following the Petition Date, of the Debtors'

14  Wells Fargo accounts and the amounts expended in connection with the operation of the Hotels.

15          f.      Beginning after the first full calendar month after the Petition Date, amounts

16  remaining from the monthly income after payment of the approved expenses and fees will be paid

17  to L-O Sherwood (as to Sherwood Hospitality Group) and L-O Tigard (as to DVKOCR) as

18  adequate protection and applied by the respective Lien Creditor to their outstanding claim balance

19  in accordance with any applicable agreements with the Debtor(s).

20              i.      At the same time as such monthly income and expense information

21              is supplied to the Debtors, RRH will supply the same information to the Lien

22              Creditors.

23              ii.      The Lien Creditors may then submit an authorization for payment

24              to RRH in accordance with the remaining income after expenses and fees but in no

25              event in an amount greater than the Net Income on Exhibits 1 and 2 (described

26              below) for any given month.

**Page 4 of 7** – ORDER AUTHORIZING USE OF CASH COLLATERAL AND [RELATED RELIEF]

Exhibit 1 - Page 4 of 7

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1    iii.    On request from the Debtor(s), the Lien Creditors will provide a

2    statement of the application of such adequate protection payments within three (3)

3    business days of such request.

4    iv.    Debtors and Lien Creditors agree that amounts remitted to Lien

5    Creditors in accordance with the provisions of this Order are sufficient to meet the

6    requirements of section 362(d)(3)(B) of the Bankruptcy Code.

7    5.    RRH's payment of expenses will be according to the terms of its Hotel Management

8    Agreements with the Debtors and according to the Annual Plan developed in connection with the

9    same. The Annual Plan for the Sherwood Hotel is attached to this Order as Exhibit 1, and the

10    Annual Plan for the Tigard Hotel is attached to this Order as Exhibit 2.

11    6.    Pursuant to section 105(a) and 345, and to facilitate the use of cash collateral

12    authorized in this Order, Debtors are authorized to maintain and use its prepetition accounts at

13    Wells Fargo, including those subject to DACAs in favor of L-O Sherwood and L-O Tigard.

14    Specifically, Debtors are authorized to maintain and use the Wells Fargo accounts ending in (last

15    4) 9037 and 7697. Debtors will cease using all other prepetition bank accounts at any other

16    financial institution(s) and direct the funds held in such accounts to the authorized Wells Fargo

17    accounts or newly-opened, debtor-in-possession accounts, as appropriate.

18    7.    This Order shall be deemed to constitute a security agreement under the applicable

19    provisions of the Uniform Commercial Code ("UCC") in effect in states where the Debtor (a) is

20    domiciled, (b) operate its business, and (c) maintain its principal place of business.  The continuing

21    lien provided under section 552(b)(2) is be a valid, perfected and enforceable security interest and

22    lien on the property of the Debtors and the Debtors' estates without further filing or recording of

23    any document or instrument or any other action, but only to the extent of the enforceability of Lien

24    Creditors' security interests in the Prepetition Collateral.  Notwithstanding the foregoing, each

25    Debtor is authorized and directed to execute and deliver to Lien Creditor(s) such financing

26

**Page 5 of 7** – ORDER AUTHORIZING USE OF CASH COLLATERAL AND [RELATED RELIEF]

Exhibit 1 - Page 5 of 7

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1  statements, instruments, and other documents as Lien Creditor(s) may deem necessary or desirable

2  from time to time.

3      8.    Nothing in this Order shall be construed to (a) prejudice a right of any party in

4  interest (including each of the Debtors) to contest the validity, priority or extent of the liens or

5  security interests of any party in any collateral or in the proceeds thereof, as of, on, or after the

6  Petition Date; (b) grant a security interest in the debtor-in-possession or trustee's avoidance

7  powers; (c) convert any pre-petition obligations into post-petition obligations; (d) require payment

8  of any obligations on confirmation of a plan of reorganization; (e) alter, improve, limit or impair

9  the rights, if any, of parties claiming to have rights of reclamation against a Debtor, or a Debtor's

10 assets or (f) enhance the secured position of any creditor as of the Petition Date.

11     9.    Debtors are authorized to execute and deliver to the Lien Creditors such instruments

12 considered by them to be necessary or desirable to perfect the security interests and liens given to

13 them herein, and said parties are authorized to receive, file, and record the same.

14     10.   Nothing contained in this Order shall constitute a determination as to the amount,

15 validity or priority of any pre-petition obligation, security interest or lien and all rights or parties

16 in interest to claim that any pre-petition lien or security interest in a Debtor's property is

17 unperfected, unenforceable, invalid or voidable, are reserved.  Additionally, nothing in this Order

18 shall constitute an admission or acknowledgment by either Debtor that any party has a valid or

19 perfected lien in the cash of a Debtor now existing or subsequently received, and the references

20 herein to "Cash Collateral" is without prejudice to all rights, defenses and claims of either Debtor

21 to contend that any party does not have a perfected lien or security interest in such cash.

22     11.   The provisions hereof and the effect of any actions taken hereunder shall survive

23 issuance and entry of any order: (a) confirming any plan of reorganization or liquidation; (b)

24 appointing an examiner for a Debtor; (c) converting a Debtor's case to one under chapter 7 of the

25 Code; or (d) dismissing a Debtor's case.  The priorities, liens and security interests granted herein

26 shall continue in these or any superseding cases under the Code, and any such liens and security

**Page 6 of 7** – ORDER AUTHORIZING USE OF CASH COLLATERAL AND [RELATED RELIEF]

Exhibit 1 - Page 6 of 7

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1    interests shall maintain its priority as provided herein until satisfied and discharged subject to the

2    Code.

3        12.    In the event any or all of the provisions of this Order are hereafter modified,

4    amended or vacated by a subsequent order of this or any other court, no such modification,

5    amendment or vacation shall affect the validity and enforceability of any lien or priority authorized

6    or created hereby.  Notwithstanding any such modification, amendment or vacation, any claim

7    granted hereunder arising prior to the effective date of such modification, amendment or vacation

8    shall be governed in all respects by the original provisions of this Order.

9        13.    This Order does not grant authority to either Debtor to pay any pre-petition

10    obligation, expense, or debt or to pay any administrative expense claims under Section 503(b)(9).

11    Debtors may only pay such administrative expense claims upon further order of this Court after

12    the filing of an appropriate motion and notice of the same.

13                            # # #

14

15            <u>CERTIFICATION OF COMPLIANCE WITH LBR 9021-1(a)</u>

16        I certify that I have complied with the requirements of LBR 9021-1(a); the Proposed
     Order was served with the Motion.

17    PRESENTED BY:

18    SUSSMAN SHANK LLP

19    _____

20    Douglas R. Ricks, OSB No. 044026
     dricks@sussmanshank.com

21    Proposed Attorneys for Debtors

22

23

24

25

26

**Page 7 of 7** – ORDER AUTHORIZING USE OF CASH COLLATERAL AND [RELATED RELIEF]

Exhibit 1 - Page 7 of 7

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

**Full Year - Summary Income Statement**

**Year - January-December, 2025 - Budget**

| PDXSH - Hampton Inn & Suites Sherwood | January 2025 | February 2025 | March 2025 | April 2025 | May 2025 | June 2025 | July 2025 | August 2025 | September 2025 | October 2025 | November 2025 | December 2025 | Total | %REV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | AMT | AMT | AMT | AMT | AMT | AMT | AMT | AMT | AMT | AMT | AMT | AMT | AMT | %REV |
| Available Rooms | 2,263 | 2,044 | 2,263 | 2,190 | 2,263 | 2,190 | 2,263 | 2,263 | 2,190 | 2,263 | 2,190 | 2,263 | 26,645 | |
| Occupied Rooms | 1,696 | 1,543 | 1,642 | 1,554 | 1,635 | 1,949 | 2,035 | 2,039 | 1,689 | 1,726 | 1,546 | 1,576 | 20,630 | |
| | | | | | | | | | | | | | | |
| Occupancy | 74.9 | 75.5 | 72.6 | 71.0 | 72.2 | 89.0 | 89.9 | 90.1 | 77.1 | 76.3 | 70.6 | 69.6 | 77.4 | |
| ADR | 119.56 | 120.56 | 124.60 | 132.40 | 130.12 | 152.02 | 152.93 | 158.83 | 145.87 | 140.73 | 127.49 | 116.55 | 136.37 | |
| RevPAR | 89.60 | 91.01 | 90.41 | 93.95 | 94.01 | 135.29 | 137.52 | 143.11 | 112.50 | 107.33 | 90.00 | 81.17 | 105.58 | |
| | | | | | | | | | | | | | | |
| Revenues | | | | | | | | | | | | | | |
| Room Revenue | 204,775 | 187,862 | 206,539 | 207,589 | 214,682 | 298,571 | 313,578 | 326,239 | 248,360 | 244,929 | 198,928 | 185,556 | 2,837,608 | 98.8 |
| Food and Beverage Revenue | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.0 |
| Meeting Room Revenue | 500 | 500 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 500 | 250 | 7,750 | 0.3 |
| Other Revenue | 2,154 | 1,960 | 2,085 | 1,974 | 2,076 | 2,475 | 2,584 | 2,590 | 2,145 | 2,192 | 1,963 | 2,002 | 26,200 | 0.9 |
| **Total Departmental Revenue** | **207,429** | **190,322** | **209,374** | **210,313** | **217,509** | **301,796** | **316,912** | **329,579** | **251,255** | **247,871** | **201,391** | **187,808** | **2,871,558** | **100.0** |
| | | | | | | | | | | | | | | |
| Departmental Expenses | | | | | | | | | | | | | | |
| Rooms | 58,405 | 53,190 | 57,346 | 55,120 | 57,970 | 65,080 | 67,682 | 68,082 | 58,989 | 60,084 | 54,972 | 55,774 | 712,694 | 25.1 |
| F&B | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.0 |
| Meeting Room | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 300 | 3.9 |
| Other | 1,077 | 980 | 1,043 | 987 | 1,038 | 1,238 | 1,292 | 1,295 | 1,073 | 1,096 | 982 | 1,001 | 13,102 | 50.0 |
| **Total Departmental Expenses** | **59,507** | **54,195** | **58,414** | **56,132** | **59,033** | **66,343** | **68,999** | **69,402** | **60,087** | **61,205** | **55,979** | **56,800** | **726,096** | **25.3** |
| | | | | | | | | | | | | | | |
| **DEPARTMENTAL PROFIT** | **147,922** | **136,126** | **150,961** | **154,180** | **158,475** | **235,453** | **247,914** | **260,177** | **191,168** | **186,666** | **145,412** | **131,008** | **2,145,463** | **74.7** |
| | | | | | | | | | | | | | | |
| Undistributed Expenses | | | | | | | | | | | | | | |
| Administrative & General | 22,695 | 33,326 | 24,750 | 22,356 | 22,977 | 24,917 | 25,761 | 39,565 | 23,802 | 23,827 | 22,506 | 22,546 | 309,028 | 10.8 |
| Information & Technology | 4,310 | 4,310 | 4,310 | 4,310 | 4,310 | 4,310 | 4,310 | 4,310 | 4,310 | 4,310 | 4,310 | 4,310 | 51,720 | 1.8 |
| Sales & Marketing | 31,303 | 29,026 | 31,551 | 31,707 | 32,660 | 44,022 | 46,050 | 47,771 | 37,232 | 36,760 | 30,531 | 28,707 | 427,319 | 14.9 |
| Repairs & Maintenance | 13,123 | 10,736 | 14,989 | 13,731 | 13,127 | 12,429 | 15,572 | 18,181 | 11,293 | 16,609 | 10,875 | 11,181 | 161,845 | 5.6 |
| Utilites | 10,057 | 9,150 | 9,737 | 9,215 | 9,696 | 11,558 | 12,068 | 12,091 | 10,016 | 10,235 | 9,168 | 9,346 | 122,336 | 4.3 |
| **Total Undistributed Expenses** | **81,489** | **86,548** | **85,336** | **81,319** | **82,770** | **97,236** | **103,759** | **121,919** | **86,653** | **91,741** | **77,389** | **76,089** | **1,072,248** | **37.3** |
| | | | | | | | | | | | | | | |
| **GROSS OPERATING PROFIT** | **66,433** | **49,579** | **65,624** | **72,862** | **75,705** | **138,217** | **144,154** | **138,258** | **104,515** | **94,925** | **68,023** | **54,919** | **1,073,214** | **37.4** |
| | | | | | | | | | | | | | | |
| Non-Operating Expenses | | | | | | | | | | | | | | |
| Management Fees | 6,083 | 5,581 | 6,138 | 6,172 | 6,382 | 8,889 | 9,336 | 9,716 | 7,391 | 7,287 | 5,913 | 5,511 | 84,399 | 2.9 |
| Insurance - Property & Casualty | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 42,000 | 1.5 |
| Business Taxes | 0 | 0 | 0 | 0 | 0 | 150 | 0 | 0 | 0 | 0 | 0 | 0 | 150 | 0.0 |
| Personal Property Taxes | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 600 | 0.0 |
| Real Estate Taxes | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 30,000 | 1.0 |
| Professional Fees | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.0 |
| Owner Expense | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.0 |
| Asset Management Fee | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 30,000 | 1.0 |
| **TOTAL NON-OPERATING OTHER EXPENSES** | **14,633** | **14,131** | **14,688** | **14,722** | **14,932** | **17,589** | **17,886** | **18,266** | **15,941** | **15,837** | **14,463** | **14,061** | **187,149** | **6.5** |
| **Total Non-Operating Expenses** | **14,633** | **14,131** | **14,688** | **14,722** | **14,932** | **17,589** | **17,886** | **18,266** | **15,941** | **15,837** | **14,463** | **14,061** | **187,149** | **6.5** |
| | | | | | | | | | | | | | | |
| **EBITDA** | **51,800** | **35,448** | **50,936** | **58,139** | **60,773** | **120,628** | **126,268** | **119,992** | **88,574** | **79,089** | **53,560** | **40,858** | **886,066** | **30.9** |
| | | | | | | | | | | | | | | |
| Fixed Expenses | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| **NET INCOME/(LOSS)** | **51,800** | **35,448** | **50,936** | **58,139** | **60,773** | **120,628** | **126,268** | **119,992** | **88,574** | **79,089** | **53,560** | **40,858** | **886,066** | **30.9** |

Exhibit 1 – Page 1 of 1

**Full Year - Summary Income Statement**

Year - January-December, 2025 - Budget

| PDXTG - Hampton Inn & Suites Portland Tigard | January 2025 | February 2025 | March 2025 | April 2025 | May 2025 | June 2025 | July 2025 | August 2025 | September 2025 | October 2025 | November 2025 | December 2025 | Total | %REV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | AMT | AMT | AMT | AMT | AMT | AMT | AMT | AMT | AMT | AMT | AMT | AMT | AMT | %REV |
| Available Rooms | 4,712 | 4,256 | 4,712 | 4,560 | 4,712 | 4,560 | 4,712 | 4,712 | 4,560 | 4,712 | 4,560 | 4,712 | 55,480 | |
| Occupied Rooms | 2,834 | 2,646 | 3,125 | 3,276 | 2,836 | 3,478 | 3,780 | 3,467 | 2,851 | 2,722 | 2,402 | 2,463 | 35,880 | |
| | | | | | | | | | | | | | | |
| Occupancy | 60.1 | 62.2 | 66.3 | 71.8 | 60.2 | 76.3 | 80.2 | 73.6 | 62.5 | 57.8 | 52.7 | 52.3 | 64.7 | |
| ADR | 121.82 | 126.94 | 132.73 | 132.72 | 139.27 | 151.47 | 152.11 | 153.03 | 143.83 | 135.29 | 136.00 | 124.34 | 138.49 | |
| RevPAR | 73.27 | 78.92 | 88.02 | 95.35 | 83.82 | 116.02 | 121.51 | 112.60 | 89.92 | 78.16 | 71.64 | 64.99 | 89.57 | |
| | | | | | | | | | | | | | | |
| **Revenues** | | | | | | | | | | | | | | |
| Room Revenue | 348,724 | 339,189 | 418,782 | 438,993 | 398,717 | 533,870 | 577,786 | 535,373 | 413,877 | 371,801 | 329,809 | 309,308 | 5,016,228 | 98.2 |
| Food and Beverage Revenue | 2,380 | 2,222 | 2,625 | 2,751 | 2,382 | 2,921 | 3,175 | 2,912 | 2,394 | 2,286 | 2,017 | 2,068 | 30,133 | 0.6 |
| Meeting Room Revenue | 2,590 | 2,627 | 4,012 | 3,947 | 4,189 | 4,065 | 4,088 | 4,102 | 3,946 | 3,956 | 2,944 | 2,866 | 43,332 | 0.8 |
| Other Revenue | 3,811 | 3,608 | 4,125 | 4,288 | 3,813 | 4,506 | 4,832 | 4,494 | 3,829 | 3,690 | 3,344 | 3,410 | 47,750 | 0.9 |
| **Total Departmental Revenue** | **355,124** | **345,423** | **426,919** | **447,229** | **406,719** | **542,441** | **586,706** | **543,969** | **421,652** | **379,446** | **336,097** | **315,584** | **5,107,310** | **100.0** |
| | | | | | | | | | | | | | | |
| **Departmental Expenses** | | | | | | | | | | | | | | |
| Rooms | 89,401 | 85,913 | 97,543 | 100,648 | 91,231 | 107,698 | 115,778 | 110,681 | 92,173 | 87,359 | 79,787 | 81,142 | 1,139,354 | 22.7 |
| F&B | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.0 |
| Meeting Room | 69 | 42 | 67 | 55 | 46 | 63 | 73 | 85 | 41 | 41 | 21 | 21 | 615 | 1.4 |
| Other | 1,550 | 1,449 | 1,712 | 1,794 | 1,556 | 1,903 | 2,066 | 1,897 | 1,564 | 1,495 | 1,317 | 1,350 | 19,653 | 41.2 |
| **Total Departmental Expenses** | **91,020** | **87,404** | **99,322** | **102,497** | **92,834** | **109,664** | **117,917** | **112,664** | **93,778** | **88,884** | **81,125** | **82,514** | **1,159,622** | **22.7** |
| | | | | | | | | | | | | | | |
| **DEPARTMENTAL PROFIT** | **264,104** | **258,019** | **327,596** | **344,732** | **313,886** | **432,777** | **468,789** | **431,305** | **327,874** | **290,562** | **254,972** | **233,070** | **3,947,688** | **77.3** |
| | | | | | | | | | | | | | | |
| **Undistributed Expenses** | | | | | | | | | | | | | | |
| Administrative & General | 30,421 | 38,699 | 32,024 | 32,030 | 31,480 | 34,655 | 36,423 | 50,648 | 31,427 | 30,616 | 29,014 | 28,793 | 406,229 | 8.0 |
| Information & Technology | 4,185 | 4,185 | 4,185 | 4,185 | 4,185 | 4,185 | 4,185 | 4,185 | 4,185 | 4,185 | 4,185 | 4,185 | 50,220 | 1.0 |
| Sales & Marketing | 52,674 | 51,144 | 62,060 | 64,585 | 59,648 | 77,311 | 83,361 | 77,950 | 61,246 | 55,782 | 50,242 | 47,410 | 743,411 | 14.6 |
| Repairs & Maintenance | 22,247 | 17,610 | 19,464 | 24,529 | 16,772 | 18,207 | 21,419 | 18,600 | 16,710 | 18,807 | 16,939 | 15,377 | 226,681 | 4.4 |
| Utilites | 19,271 | 17,993 | 21,250 | 22,277 | 19,285 | 23,650 | 25,704 | 23,576 | 19,387 | 18,510 | 16,334 | 16,748 | 243,984 | 4.8 |
| **Total Undistributed Expenses** | **128,798** | **129,630** | **138,983** | **147,606** | **131,369** | **158,008** | **171,092** | **174,958** | **132,954** | **127,899** | **116,714** | **112,514** | **1,670,525** | **32.7** |
| | | | | | | | | | | | | | | |
| **GROSS OPERATING PROFIT** | **135,307** | **128,389** | **188,614** | **197,126** | **182,516** | **274,769** | **297,697** | **256,347** | **194,920** | **162,663** | **138,258** | **120,556** | **2,277,162** | **44.6** |
| | | | | | | | | | | | | | | |
| **Non-Operating Expenses** | | | | | | | | | | | | | | |
| Management Fees | 10,654 | 10,363 | 12,808 | 13,417 | 12,202 | 16,273 | 17,601 | 16,319 | 12,650 | 11,383 | 10,083 | 9,468 | 153,219 | 3.0 |
| Insurance - Property & Casualty | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 66,000 | 1.3 |
| Business Taxes | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.0 |
| Personal Property Taxes | 3,709 | 3,709 | 3,709 | 3,709 | 3,709 | 3,709 | 3,709 | 3,709 | 3,709 | 3,709 | 3,709 | 3,709 | 44,508 | 0.9 |
| Real Estate Taxes | 3,404 | 3,404 | 3,404 | 3,404 | 3,404 | 3,404 | 3,404 | 3,404 | 3,404 | 3,404 | 3,404 | 3,404 | 40,848 | 0.8 |
| Professional Fees | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.0 |
| Owner Expense | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.0 |
| Asset Management Fee | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 60,000 | 1.2 |
| TOTAL NON-OPERATING OTHER EXPENSES | 28,267 | 27,976 | 30,421 | 31,030 | 29,815 | 33,886 | 35,214 | 33,932 | 30,263 | 28,996 | 27,696 | 27,081 | 364,575 | 7.1 |
| **Total Non-Operating Expenses** | **28,267** | **27,976** | **30,421** | **31,030** | **29,815** | **33,886** | **35,214** | **33,932** | **30,263** | **28,996** | **27,696** | **27,081** | **364,575** | **7.1** |
| | | | | | | | | | | | | | | |
| **EBITDA** | **107,040** | **100,414** | **158,193** | **166,096** | **152,702** | **240,882** | **262,483** | **222,415** | **164,658** | **133,667** | **110,562** | **93,476** | **1,912,587** | **37.4** |
| | | | | | | | | | | | | | | |
| **Fixed Expenses** | | | | | | | | | | | | | | |
| Interest Expense | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.0 |
| **Total Fixed Expenses** | **0** | **0** | **0** | **0** | **0** | **0** | **0** | **0** | **0** | **0** | **0** | **0** | **0** | **0.0** |
| | | | | | | | | | | | | | | |
| **NET INCOME/(LOSS)** | **107,040** | **100,414** | **158,193** | **166,096** | **152,702** | **240,882** | **262,483** | **222,415** | **164,658** | **133,667** | **110,562** | **93,476** | **1,912,587** | **37.4** |

Exhibit 2 – Page 1 of 1